UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Elizabeth E. Brown

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DIETER WOLF SCHNEIDER | ) | Bankruptcy Case No. 09-32752- EEB |
| AND VICTORIA LYNNE SCHNEIDER, | ) | Chapter 7 |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| NORMAN W. PAULI, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 10-1159- EEB |
| | ) | |
| DIETER WOLF SCHNEIDER | ) | |
| AND VICTORIA LYNNE SCHNEIDER, | | |
| | ) | |
| Defendants. | ) | |

_____

**ORDER DISMISSING COMPLAINT WITH PREJUDICE**
_____

THIS MATTER comes before the Court on Plaintiff's Complaint, alleging his unsecured loan to Debtors should be nondischargeable under 11 U.S.C. § 523(a)(2)(A). Following trial on the matter, the Court FINDS and CONCLUDES that the Plaintiff has failed to meet his burden of demonstrating a false representation or intent to deceive by the Debtors. Accordingly, Debtors' obligation to Plaintiff is dischargeable.

**I. Background**

Dieter Wolf Schneider ("Schneider") and Victoria Lynne Schneider met Plaintiff Norman W. Pauli, Jr. ("Pauli") and his wife in approximately 2000, when the Schneiders purchased the Paulis' residence in Mississippi. Schneider, a cardiologist, and Pauli, an attorney, became friends, with Pauli sometimes asking Schneider for his medical opinion about some of Pauli's personal injury cases. In 2005, the Schneiders decided to move to Colorado, and Schneider resigned from his cardiology practice so he could help care for his wife, who had suffered a stroke. On approximately June 5, 2005, Schneider asked Pauli to cosign a loan in connection with the purchase of an investment property in Wheat Ridge, Colorado (the "Property"). Pauli declined. Approximately ten days later, Schneider asked Pauli for a $100,000 loan, and offered to pay Pauli a fee of $7,250 as consideration for making the loan. Pauli alleges that Schneider promised him the $100,000 would remain in the Schneiders' checking account in Southtrust

Bank in Hattiesburg, Mississippi, until repaid, and that the $100,000 would not be used to purchase the Property. Pauli agreed to make the loan, and on June 20, 2005, Pauli delivered a check to the Schneiders in the amount of $100,000. The Schneiders signed a Promissory Note dated June 20, 2005, payable to Pauli in the sum of $107,250.00, due and payable on July 20, 2005 (the "Note"). The same date, the Schneiders signed a quit claim to Pauli on their Mississippi residence, which Pauli never recorded. Finally, Schneider signed a bill of sale transferring to Pauli a 1995 Seadoo jetski and trailer.

The loan proceeds were deposited into the Schneiders' checking account at Southtrust Bank. Subsequently, Pauli discovered that the loan proceeds had been withdrawn and were used to purchase the Property on July 8, 2005. During 2006, the Schneiders defaulted on the main mortgage securing the Property, and the lender foreclosed on the Property in 2007. On April 24, 2008, at Pauli's request, the Schneiders executed an Affidavit and Waiver of Statute of Limitations (the "Statute of Limitations Waiver"), drafted by Pauli. Other than a payment of $100 made to Pauli on April 21, 2008, the Schneiders have not repaid any portion of the loan. The Schneiders filed a voluntary joint petition under Chapter 7 of the Bankruptcy Code in Colorado on October 27, 2009. On February 5, 2010, Pauli filed this adversary proceeding against the Schneiders.[1] Pauli contends that the total amount due on the Note is $152,488 ($107,250 principal plus simple interest of $45,838, less $500 for the value of the jet ski, and less the $100 payment), exclusive of attorney fees and costs.

## II. Dischargeability under 11 U.S.C. § 523(a)(2)(A)

Pauli's only claim in this proceeding is under 11 U.S.C. § 523(a)(2)(A). That section provides that a discharge under Chapter 7 does not discharge a debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent the debt is obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. The Plaintiff has the burden to establish each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). To prove a claim under 11 U.S.C. § 523(a)(2)(A), a creditor must prove the following elements: 1) The debtor made a false representation; 2) The debtor made the representation with the intent to deceive the creditor; 3) The creditor relied on the representation; 4) The creditor's reliance was reasonable;[2] and 5) The debtor's representation caused the creditor to sustain a loss. *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996). Exceptions to discharge are narrowly construed, and doubts are resolved in the debtor's favor. *Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997).

---

[1] On August 5, 2010, Victoria Lynne Schneider was dismissed as a defendant pursuant to the Parties' Stipulation for Dismissal.

[2] The proper standard is justifiable, not reasonable, reliance, under *Field v. Mans*, 516 U.S. 59, 74-75 (1995).

At issue at trial was whether (1) Schneider agreed that the loan proceeds of $100,000 would not be used to purchase the Property and/or would remain on deposit in the Schneiders' checking account in Mississippi until repaid; (2) Schneider made the statement with the intent to deceive Pauli; (3) Pauli justifiably relied on the statement; and (4) such reliance caused Pauli to sustain a loss. [3] Additionally, after trial, the court asked the parties to brief: (1) Whether the Statute of Limitations Waiver should be interpreted to cover waiver of a fraud action; (2) Whether 11 U.S.C. § 523 (a)(2)(A) of the Bankruptcy Code provides a new cause of action for fraud or resurrects an old fraud claim that expired prior to the bankruptcy; (3) When the cause of action for fraud accrued; and (4) Whether the defendant waived this defense by not highlighting it as an affirmative defense. On February 18, 2011, the parties filed a Stipulated Post-Trial Joint Brief wherein Schneider conceded that he does not have a viable statute of limitations defense.[4]

### A. False Representation

At trial, Pauli testified that Schneider specifically promised him that the $100,000 would not leave the Mississippi bank account, and would not be used to purchase the Property. When asked what Pauli thought the purpose of the loan was, Pauli replied, "For some reason, it was important to him to have that kind of money on deposit in one of his bank accounts. My thinking was, he wanted to demonstrate his creditworthiness." Schneider, on the other hand, testified that he asked Pauli for the $100,000 as a short-term loan in the event that other financing did not come through to purchase the Property. Schneider denied that Pauli conditioned the loan on the money being parked, and denied ever promising Pauli that the $100,000 would stay in the bank account in Mississippi, or that the money would not be used to purchase the Property.

---

[3] Joint Pretrial Statement at 7. At trial, the parties stipulated to the remaining two issues listed in the pretrial statement: that the law of Mississippi applies to any issues regarding contract or usury, and that, if the court rules in Pauli's favor, the court could enter a judgment in favor of Pauli for the amount owed on the Note plus accrued interest of $45,838.

[4] In the Stipulated Post-Trial Joint Brief, the parties agree that the statute of limitations defense was at least partially waived by Schneider when he failed to raise it in his answer. The parties also agree that once Pauli established a viable claim upon which to assert his § 523 action (sounding in breach of contract as preserved by the Statute of Limitations Waiver), the fact that a fraud claim may be barred by the applicable state statute of limitations does not prevent Pauli from asserting a claim against Schneider to block dischargeability of the indebtedness resulting from the breach of contract claim based on purported fraud related to that claim, citing *RTC v. McKendry (In re McKendry,* 40 F.3d 331, 337 (10th Cir. 1994). This court does not necessarily agree with the reasoning of *McKendry* (*see, e.g., In re Thrall,* 196 B.R. 959, 967 n. 7 (Bankr. D. Colo. 1996)(noting that the application of *McKendry* may give a creditor a "second bite at the apple"), but recognizes it is binding precedent, and that the parties have stipulated to its application in this case. Thus, Pauli's claim is not barred by any statute of limitations.

The court finds that both Pauli and Schneider gave credible testimony at trial. The court believes that Pauli expressed to Schneider his preference that the money stay parked in the Mississippi bank account and be repaid to Pauli once other funds became available to Schneider, something that Schneider anticipated would happen in a very short amount of time. The court believes that Schneider did not understand Pauli's condition about parking the money, and focused instead only on the short-term nature of the loan and the need to show the lender he had additional funds.

How does the Court reconcile this contradictory testimony? It is like when a teenager asks his father for the use of the car to attend some event immediately that he desperately wants to attend. While Dad hands him the keys, Dad also states a quid pro quo condition that son will have to mow the grass on the weekend. The son is so eager to get the keys and leave that he says, "okay, Dad, I have to go" and runs out. The son was not really listening to Dad's condition. That is what happened here. Schneider was desperate to close on his deal. He was not really listening to Pauli's condition about leaving the money in the account. In Schneider's mind, he had to show the lender these additional funds, whether as part of the down payment or as an additional asset on his balance sheet. There was no real distinction between these two in Schneider's mind. He knew it was to be only a short term loan from Pauli, but he did not understand that he had agreed not to remove these funds from the account. This is the risk inherent in transacting a loan without proper documentation to reflect all of the conditions.[5] Although no party testified to this effect, the Court finds it highly likely that Pauli did not fully document this condition because he knew that their agreement would likely deceive the lender as to this "cash asset." The Court surmises that he wanted to help his close friend with a short term loan, but did not want to risk being a party himself to any fraud. In any event, the Court concludes that both parties testified truthfully, but there had never been a meeting of the minds on this condition. Since there was never a meeting of the minds, Pauli has not carried his burden of proof that Schneider made a false representation as to his intended use of the funds.

### B. Intent to Deceive

The alleged false representations in this case are promises or statements of future intentions. "Ordinarily, statements as to future events are not actionable as fraud, but '[a] representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention.' Restatement (Second) of Torts § 530(1) (1977). The relevant intention is the debtor's intention at the time he or she made the promise or statement. *Id.* cmt. d. The mere fact of nonperformance does not establish the fraudulent intent, nor does it shift the burden of proving intent to the debtor.'" *In re Stauffer*, 391 B.R. 211, at *4 (10th Cir. BAP 2008).

---

[5] Pauli admitted at trial that Schneider's alleged promises to park the money and to not use it to purchase the Property were not documented in the Note, the quit claim deed, the bill of sale, or in any of the emails between the parties admitted as stipulated exhibits.

The court finds that Schneider gave credible testimony as to his intent at the time he asked Pauli for the loan. Schneider testified that at the time of the loan, he intended to pay it back in a short amount of time, once financing came through from another source. He further testified that at the time of the closing, those funds had not come through as expected, and the purchase terms for the Property changed. Pauli bears the burden of proving that, at the time of the loan, Schneider represented that he would not take the money out of the Mississippi bank account and use it to purchase the Property, and that he made this promise with the intent to deceive Pauli. While the court finds Pauli's testimony credible, "where two parties present equally credible, but contradictory, evidence, the party bearing the burden of proof has not met his or her burden." *In re Ryan*, 443 B.R. 395, 408 (Bankr. N.D. Tex. 2010).

Having found that Pauli has failed to meet his burden of proof of showing a false representation and intent to deceive, it is not necessary to discuss the remaining elements of actual and justifiable reliance and damages caused by the false representation.

### III. CONCLUSION

Accordingly, it is hereby ORDERED that:

1. Pauli's claim under 11 U.S.C. § 523(a)(2)(A) against Schneider is dischargeable;

2. Pauli's complaint against Schneider is dismissed.

DATED this 18th day of August, 2011.

BY THE COURT:

Elizabeth E. Brown
United States Bankruptcy Judge